Robert E. HOLT; Connie Holt; and Marion E. Holt, Appellants,

v.

The PEOPLES BANK OF MT. WASHINGTON, Appellee.

No. 90–SC–0429–DG.

Supreme Court of Kentucky.

Aug. 29, 1991.

John A. Schmidt, Shepherdsville, for appellants.

Joseph J. Wantland, Shephersdville, for appellee.

LAMBERT, Justice.

The issue presented is whether any failure of a secured party to dispose of the collateral in a commercially reasonable manner necessarily results in a forfeiture of its right to a deficiency judgment. Decisions of the Court of Appeals of Kentucky in *Bank Josephine v. Conn*, Ky.App., 599 S.W.2d 773 (1980), *Rexing v. Doug Evans Auto Sales, Inc.*, Ky.App., 703 S.W.2d 491 (1986), and *Bailey v. Navistar Financial Corp.*, Ky.App., 709 S.W.2d 841 (1986), broadly hold that a secured party found to be in violation of the requirements of KRS 355.9–504 is estopped to claim entitlement to a deficiency judgment. Despite these decisions, in the instant case, the trial court and the Court of Appeals fashioned an equitable remedy which allowed the debtors a credit against the amount of the deficiency for the damage which resulted from the commercially unreasonable disposition of the collateral.

In the trial court it was determined that the secured party, appellee herein, did not act in a commercially reasonable manner when, after repossession, it failed to timely dispose of the truck which secured the indebtedness. Diminution in value of the vehicle, earlier appraised at $18,000—$19,-000, was fixed at $1,439 and appellants were allowed a credit for this sum against the amount of the deficiency judgment entered in favor of appellee. In this Court there is no viable contention that the finding of commercial unreasonableness and the amount of loss occasioned thereby is clearly erroneous. CR 52.01.

Throughout this litigation, appellants have argued that the finding of commercial unreasonableness barred recovery of any deficiency judgment. The courts below rejected this contention, but failed to distinguish or adequately explain their failure to follow what appears to be controlling authority. See *Bank Josephine v. Conn, supra, Rexing v. Doug Evans Auto Sales, Inc., supra,* and *Bailey v. Navistar Financial Corp., supra.* The Court of Appeals simply said "[i]n light of the minimal decrease in value of the truck due to the bank's action, it would not be fair to the bank to completely bar it from seeking a deficiency judgment." Instead, the Court of Appeals adopted the view found in *Wilson Leasing Co. v. Seaway Pharmacal Corp.,* 220 N.W.2d 83 (Mich.App.1974), which allows an offset for the damage caused by the secured party.

Prior to addressing the real issue, appellee has contended that the loss was occasioned by appellants' own misconduct or that the trial court's finding was clearly erroneous. This issue was settled against appellee in the Court of Appeals, "We cannot say then that the trial court's finding that the bank did not act in a commercially reasonable manner is clearly erroneous," and appellee's failure to present the issue to this Court by means of a cross-motion for discretionary review precludes any further review. CR 76.21 and *Commonwealth of Kentucky, Transportation Cabinet, Department of Highways v. Taub,* Ky., 766 S.W.2d 49 (1989).

On the merits, appellee contends that if the debtor can prove damages occasioned by the secured party's improper disposition of the collateral with reasonable certainty, such sum should be deducted from the amount of the deficiency judgment allowed. If such damages are not subject to reasonable calculation, appellee concedes that the

entire deficiency should be forfeited. While this view is not unappealing, in most cases it would provide little incentive to the secured party to strictly observe the requirements of KRS 355.9–504. In one study of repossession and resale of automobiles, the author concluded that the code procedure which permits recovery of deficiency provided a disincentive to the secured creditor to obtain the highest price and recommended elimination of all deficiency judgments in this context. Shuchman, "Profit on Default: An Archival Study of Automobile Repossession and Resale," 22 Stan.L.Rev. 20 (1969). If the approach urged by appellee was followed, in many cases a secured party would be entitled to ignore or circumvent the requirements of the law with no greater risk of loss than payment of that which his misconduct brought about. We considered a similar question in the context of bad faith refusal to pay insurance policy proceeds and held that an insurer should not be entitled to wrongfully withhold payment "with no greater possible detriment than payment of the amount justly owed plus interest." *Curry v. Fireman's Fund Ins. Co.*, Ky., 784 S.W.2d 176 (1989). The analogy is appropriate. Duties arising under an insurance contract are consensual and the duties of a secured party are imposed by law. We decline to wholly adopt the approach urged by appellee.

The parties and the courts below have relied heavily upon the decisions of the Court of Appeals in *Bank Josephine v. Conn, supra, Rexing v. Doug Evans Auto Sales, Inc., supra,* and *Bailey v. Navistar Financial Corporation, supra,* cases in which the real controversy was whether the secured party breached its duty to act in a commercially reasonable manner, a question which is not before us now. It appears to have been conceded that upon such a determination, the doctrine of estoppel prevented recovery of a deficiency judgment. Whether the doctrine of estoppel arises to automatically forfeit a secured party's right to recover any deficiency judgment does not appear to have been the main event. For the proposition that any violation of commercial reasonableness re-

sults in the forfeiture, *Rexing* and *Bailey* rely exclusively on *Bank Josephine,* which relies exclusively on the common law doctrine of estoppel rather than a provision of the Uniform Commercial Code. In our view, estoppel was too broadly applied and should be limited as hereinafter explained.

Whether or to what extent a secured party should be denied a deficiency judgment upon a determination that it failed to act in a commercially reasonable manner is not clear in the Uniform Commercial Code. See J. White and R. Summers, *Uniform Commercial Code,* § 26–15 (1972). KRS 355.9–504 provides that the debtor is liable for any deficiency, but KRS 355.9–507 provides that the secured party is liable for any loss caused by its failure to comply with the requirements of KRS 355.9–504, *et seq.* In an effort to achieve a proper remedy, we have examined the approach taken by numerous state courts and various text writers. See generally, Annot., *Improper Sale of Collateral—Judgment Bar,* 10 A.L.R.4th 413, (1980), and J. White and R. Summers, *Uniform Commercial Code, supra.*

■ At the outset, a distinction should be made between the failure to give presale notice of the intended disposition of collateral and other acts of commercially unreasonable behavior. Notice to the debtor that the collateral is about to be disposed of is so fundamental that no remedy less severe than forfeiture of the deficiency amount would be adequate and this remedy is by no means exclusive. In a proper case, criminal and tort liability may be imposed and a debtor is entitled to the benefits of KRS 355.9–507. See J. White and R. Summers, *Uniform Commercial Code,* § 26–12, *et seq.* The essence of the notice requirement was explained in *Bailey v. Navistar Financial Corporation, supra,* as follows:

> "The purpose of pre-sale notice is to give the debtor sufficient time to protect his interest in the collateral by participating in the sale, or by taking appropriate steps to oppose the sale. *See* KRS 355.9–504, Kentucky Commentary to subsection (3). Here, Bailey alleged that he

would have participated in or opposed the sale, and there is no evidence that his interests were protected by any other person or that he was not damaged by lack of notice." *Bailey, supra,* at 843. A secured party who fails to give the notice required by KRS 355.9–504(3) denies the debtor an opportunity to assert defenses, contest the amount claimed or pay the indebtedness prior to sale of the collateral. The greatest protection available to debtors from unscrupulous conduct by secured parties who have repossessed collateral is notice of disposition of the collateral. When notice is omitted, the principle of estoppel heretofore recognized by the courts of this Commonwealth prevents recovery of any deficiency judgment. *Skeels v. Universal CIT Credit Corporation,* 222 F.Supp. 696 (W.D.Pa.1963).

We now turn to the myriad of other circumstances in which the finding of commercial unreasonableness is based on some defect other than a failure to give notice. Three possible remedial formulas are described in D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky,* § 8.6(G)(2) (1983). Having heretofore reaffirmed our reliance on the first of these when the defect is lack of notice but rejected it in other circumstances, the first approach need not be discussed further.

█ The second and third approaches described by Professors Leibson and Nowka are substantially the same except as to the allocation of the burden of proof. In our view, the second approach is preferable. It begins with a presumption that the collateral is worth at least the amount of debt is secures and the burden is cast upon the secured party to prove that its commercial unreasonableness did not result in diminished proceeds, or if it did, by what amount. Upon failure of the secured party to prove that its conduct did not diminish the proceeds, the presumption that the collateral is of sufficient value to satisfy the debt would control and the claim for deficiency would be forfeited. If, in such circumstances, a secured party is unwilling to depend entirely upon the view, if any, that its conduct did not result in diminished proceeds, it may present evidence as to the amount of damage it caused and such sum will be deducted from the deficiency. To avoid application of the presumption that the collateral is of sufficient value to satisfy the debt, a secured party whose conduct has been found to be commercially unreasonable must prove that its conduct did not cause damage or if it did, by what amount.

In the case at bar, the trial court determined that appellee failed to dispose of the collateral in a commercially reasonable manner and that this reduced its value in the sum of $1439. Appellants were given a credit for this sum in the trial court's deficiency judgment and this was affirmed by the Court of Appeals. While our reasoning may differ to some extent from that of the courts below, we are obliged to affirm if the result achieved was correct. *Keesee v. Smith,* 289 Ky. 609, 159 S.W.2d 56 (1941), and *Ritchie v. Perry County,* 276 Ky. 57, 122 S.W.2d 988 (1938). While the burden of proof may not have been allocated precisely as we have directed, the result would have been the same and the error, if any, was harmless. CR 61.01.

One final issue merits brief discussion. It was contended in the courts below and at oral argument in this court that the discharge provisions of KRS 355.3–606(1)(b) operate to absolve appellant, Marion E. Holt, of liability. Of course, this necessarily depends on the view that said appellant was an accommodation party whether as maker or endorser. *See Schmuckie v. Alvey,* Ky., 758 S.W.2d 31 (1988). Appellants construe the statute too broadly, however, when they seek complete discharge of the accommodation party. The Court of Appeals correctly construed the statute when it granted relief "to the extent" the collateral was unjustifiably impaired. Appellant, Marion E. Holt, along with the other appellants, was benefited by the credit allowed for the diminished value resulting from the commercially unreasonable conduct of appellee.

We affirm.

All concur.